## SAMUEL H. PAGE v. FERDINAND J. ARNIM ET AL.

Where a party relies upon an estoppel *in pais*, he has the right to show all the facts and circumstances of the dealings and acts of those alleged to be estopped by their acts.

The mere failure of a party to assert his right to land for ten years, where there is no adverse possession, does not amount to an estoppel.

In Burleson v. Burleson, (28 Tex., 383,) it was held, that the tacit presence of the owner, and his knowledge of the sale of land in which the heir has a community interest, will not estop him, if the purchaser be otherwise informed of the true state of the title.

In Scoby v. Sweatt, (28 Tex., 713,) it was held, that the acts from which the estoppel is claimed to spring in some way must have influenced the pur-

chaser; that the basis upon which the estoppel rests must be actual or constructive fraud on the part of the owner, or such facts as would be tantamount to a fraud, if he were permitted to receive the property. These definitions are approved.

There seems no reason to suppose that the appellant was any better informed as to the character and legal effect of the grant, under which the administrator claimed and sold the entire league of land, than the purchaser. If one is presumed to know the legal effect, so is the other. The title showed the date of the grant. Knowing it to be community property, he was put upon inquiry as to the parties interested in it. If he were informed of appellant's interest, to have made it known to him at the sale would have furnished him with no additional information. If he did not know of it, appellant's presence at the sale could not have induced the impression of a waiver or abandonment of his title, and could in no way have induced the purchase.

The true rule seems to be, that the mere presence of the owner, if he have concealed no facts of which he was informed, and the purchaser could not have learned by the use of reasonable diligence, will not create an estoppel, unless the purchaser can show that he had reason to suppose, from the presence of the owner, that he sanctioned and acquiesced in the sale.

It is undoubtedly true, that a party will, in many instances, be concluded by his *declarations or conduct of another to his injury.* The party *is said in* such cases to be estopped from denying the truth of his admissions. But to the application of this principle, with respect to the title of real property, it must appear, first, that the party making the admission by his declaration or conduct was apprized of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and, fourth, that he relied directly on such admission, and will be injured by allowing its truth to be disproved.

The only qualification which seems necessary to the doctrine laid down in these cases is, that a party may be estopped by acts and declarations which were designed to influence another who has acted upon them, although both parties were ignorant that what is thereby represented is not true; for if one of two innocent parties must suffer, he through whose agency the loss occurred should sustain it.

Where the presence of counsel was not actually necessary, a continuance was properly refused.

Where the opposite party admitted the fact sought to be proved, the continuance was properly refused.

Where the certificate of the officer identified the witness who proved a deed for registration as the same person who signed it, the certificate will be taken as, *prima facie,* true, although there be a discrepancy in the middle initial. (Paschal's Dig., Art. 4973, Note 1084.)

A mistake in the middle initial letter of a deed, as M. *C.* B., when it was signed M. *B.* B., is no discrepancy or misnomer which the law will notice. (Paschal's Dig., Art. 1, Note 221.)

APPEAL from Lavaca. The case was tried before Hon. FIELDING JONES, one of the district judges.

The trial in the district court was had in September, 1858. The record contains two hundred pages; the briefs of counsel cover some four hundred pages; and it is hardly probable that any reasonable history of the facts will be satisfactory to those who made the record.

The points discussed by the chief justice, however, are few, and it is not very material that other questions should be noticed by the *Reporter.*

Samuel H. Page, on the 5th of October, 1854, commenced his action of trespass to try title under our statute, (Paschal's Dig., Arts. 5292 to 5307, Notes 1142 to 1153,) against Ferdinand J. Arnim, Julius E. Arnim, C. Ballard, Richard Ceal, William Moore, Charles O. Edwards, Martha Dockery, James K. Harris, and Chester Newell, for the recovery of his interest in the league of land in controversy. The case stated by the plaintiff in his petition was, that Samuel Chase, with his wife, Eliza Chase, (who had two children by a former husband,) were colonists of DeWitt's colony in 1830, and that Samuel Chase, as the head of the family, received a colonist's grant for the league of land on the 17th day of August, 1831; that Eliza Page died in 1833, leaving two children by a former marriage, Joseph W. Page and the plaintiff, Samuel H. Page; that afterwards, and before 1854, Joseph died, leaving the plaintiff his only heir; and the plaintiff claimed one-half of the land, being the community interest of the mother, which descended to her sons, in 1833, under the Spanish law, which has not been materially changed by our statute about marital rights. (Paschal's Dig., Arts. 4638, 4642, Notes 1045, 1049.)

It is needless to follow the various pleadings of the par-

ties defendants and intervenor. They covered their defenses, and plead all our statutes of limitation of three, five, and ten years; but as the whole defense might have been had under the plea of "not guilty," the material facts only are stated.

On the 20th day of February, 1830, William Chase was received as a colonist by Green DeWitt, as a married man and head of a family. His wife, Eliza, was formerly Eliza Page, and the mother of two children, to wit, Joseph W. and Samuel H. Page. On the 17th day of August, 1831, they received a grant of a league of land on Lavaca river, in DeWitt's colony, formerly in Gonzales, now in Lavaca county. In the year 1833, Eliza Chase died intestate, leaving her two sons, Joseph W. and Samuel H. Page, together with her husband, surviving her. No administration was had on her estate. Chase subsequently married, date not given, and died about the month of January, 1843, in Brazoria county. On the 4th of March, 1837, Chase sold to one E. R. Rainwater, and Rainwater sold to Chester Newell, one-fourth of the said league of land, designating it as the upper fourth of said league. This is all of the league that was sold by Chase, or any other person, during his lifetime. On the 12th of January, 1843, Mary Chase filed her application in the probate court of Brazoria county for letters of administration on William Chase's estate, representing that she was his widow, and that he left one child, the issue of their marriage. Letters were granted to her on the 30th day of January, 1843. She subsequently married William B. Bayes, who joined her in the administration September 27, 1848, and on the same day they applied for a sale of the whole league, for the purpose of raising her allowance and for support of child, &c. On the first Tuesday in November, 1848, the same was sold at the courthouse door, in the town of Brazoria, in Brazoria county, and Peter McGreal became the purchaser thereof, for the sum of $885 60. The deeds from Chase to Rainwater and

from Rainwater to Newell were filed for record the 15th June, 1844, in Gonzales, and recorded 4th September, same year.

From the year 1852, and subsequently thereto, Peter McGreal sold off various and sundry tracts of the land to defendant, Arnim, and all the co-defendants of this appellant, or to their grantees, who went into possession of said tracts under deeds from McGreal, having no respect for the appellant's upper quarter. In the early part of the year 1854 Joseph W. Page died, leaving no wife, parent, or descendent, and no other relative but Samuel H. Page, his brother. On the 5th of October, 1854, said Samuel H. Page, as heir of his mother, Eliza Chase, and of his brother, Joseph W. Page, instituted his suit against all the purchasers under McGreal and against the appellant, Chester Newell, claiming to be entitled to, and asking a decree for, one-half of the land. By an amendment Newell was declared to be a non-resident, and cited by publication; and on the 12th day of August, 1857, he came in with his answer and cross-bill, setting out his title to one-fourth of the league, deeded to him by Chase and Rainwater, and asking a decree in his favor for said quarter. The other defendants set up their respective deeds under McGreal, who was made defendant also by amendment, all of whom came in, and answered both the petition and cross-bill and answer of Newell.

The verdict was general for the defendants. Plaintiffs appealed, and defendant, Newell, also appeals, and makes his assignment of errors.

The foregoing is more materially the case made between McGreal and his vendees as against Newell, who held under Rainwater, who purchased the upper fourth of the league from Chase in 1837. Page claimed that that deed did not convey a fourth, but only an eighth of the league; that it could not pass the community interest of the heirs of Eliza Page Chase.

Against Page, McGreal proved the following facts: In 1831, at the time of the grant, Chase was married to Eliza Page Chase, the mother of the appellant; she died in 1833, leaving two children by a former marriage, Joseph W. Page and the appellant. Joseph W. Page died in 1854, and the appellant was his only heir at law. William Chase, after the death of his wife, Eliza, married a second wife, named Mary, and he died in Brazoria county, in 1843. His widow, Mary Chase, returned an inventory of his estate, on which was the league of land in controversy. One of the appraisers appointed by the court was Joseph W. Page, the brother of appellant, and his name appears to the return thereof. The said Mary Chase afterwards intermarried with W. B. Bayes, who then joined her in the administration of William Chase's estate. They returned a new inventory of his estate, on which is found the league of land in controversy. On the 27th September, 1848, the administrators aforesaid petitioned the county court of Brazoria county for an order to sell the league of land in suit. The order was granted the same day, notice of sale given, sale made, and Peter McGreal became the purchaser. The account of sales was returned, and a decree confirming the sale was made on the 26th of November, 1848, by said county court. A deed was executed by the administrators of Chase's estate to McGreal on 2d December, 1848, and the purchase-money paid by him to said administrators, and the acknowledgment of payment indorsed on the deed, and said deed and acknowledgment were both duly recorded in Lavaca county, where the land is situated, on the 9th day of September, 1851.

Joseph W. Page, brother of the appellant, in 1833, on his petition therefor, was appointed by the county court of Brazoria county administrator on the estate of his mother, Eliza Chase, and of his uncle, Anthony Clark; and he was also appointed tutor and guardian of his brother, the appellant; he made oath that he would return an inventory of

the estates, and he made sales as administrator, and returned the account thereof to the court. These proceedings were had in 1833, the year of the decease of his mother, Eliza. An order was made in the county court of Brazoria county in 1837, to the clerk of said court, to make out a correct list of all the successions opened in Brazoria county, and read the same publicly at a special term of said court. Among the successions on said list were those of Anthony Clark and Eliza Chase. In these proceedings Page took no notice of the league of land. Regular transfers were made by McGreal to the defendants for the portions of the lands claimed by them respectively. The plaintiff below and his mother resided in Brazoria county from 1842 up to the institution of the suit. His brother, Joseph W. Page, also resided there until his death, in 1854. In 1858 the plaintiff was about forty years of age. The plaintiff was present at the sale of the league of land in controversy by the administrators of William Chase, and made no objections thereto. Neither he nor his brother ever made any public claim to the land previous to the institution of this suit. It was proved that the sale was notoriously known in Brazoria county; that the taxes thereon had been paid on said league by the administrators of William Chase, and by Peter McGreal, and those claiming under him.

The defense put in by the defendants below, except Newell, and that relied upon by them, was, that the plaintiff was estopped from setting up his title as against them; that it was an estoppel *in pais*, depending upon the admissions, acts, declarations, and conduct of the plaintiff and those under whom he claimed; that these admissions, acts, &c., of the plaintiff were proper to be introduced as facts before the jury, from which they might draw correct conclusions under the charge of the court; that any fact or circumstance going to show that the plaintiff had notice of defendant's claim, or that the means of information were in his power, by which he could have been informed of his own

title or that of the defendants, were proper evidence to go to the jury.

It will thus be seen that the plaintiff did not attack the sale made by his step-father of the fourth of the league to Rainwater, (under whom Newell claimed,) in 1837, or the administrator's sale made by his step-mother in 1848. He only said that the colonist grant was community property; that upon the death of his mother, in 1833, an undivided half of the land descended to his brother and himself, as heirs to their mother; that the sale of the fourth of the league by the grantee, William Chase, only conveyed one-half of that fourth; and the sale by the administrator only conveyed the one undivided half of the remaining three-fourths. The plaintiff then could have had no objection to the mode of proving the deed to Rainwater, for he did not claim against it. It was to the interest of McGreal and his vendees to attack that deed, for, upon its face, the administrator's deed conveyed the whole, while in law it could only convey three-eighths. The defense did not deny this as a general principle, but they maintained that the Pages abandoned, or forfeited, or relinquished their right by not asserting it as successors to their mother, and by standing by and acquiescing in the claim of the administrator of the step-father to treat it as the property of his succession, and to sell it as such, in presence of the plaintiff, without objection. The principles of community property, settled in Houston v. Yates, 3 Tex., 433, and Thompson v. Cragg, 24 Tex., 582, had not then been announced. (Paschal's Dig., Art. 4642, Notes 1049 to 1051.)

Although the defendants plead limitation, there was none proved. The defense of estoppel *in pais* was sustained by sundry instructions of the court, and the points were saved by exceptions. The exclusion of the recorded copy of the deed to Rainwater was also saved by exceptions.

The instructions were to the effect, that if they believed

from the testimony the plaintiff, being of full age, stood by for a period of ten years, and allowed the land to be sold as the property of William Chase, by the administrator; and if they further believed, that the plaintiff was present at the sale, knowing what was being done, and allowed the same to proceed, and made no claim to the land, then the purchaser at the sale would obtain a good title, so far as the plaintiff is concerned, and they should find for the defendant. The court also charged the jury, that if the plaintiff was present at the administrator's sale, and allowed the sale to proceed, and made no claim to the land, he would be estopped from asserting his title.

The verdict was for the defendants, from which the plaintiff appealed.

The case turned upon the instructions and the evidence of the deed from Chase to Rainwater.

*John W. Harris*, for the appellant.—Under the modern law, to create an "*estoppel in pais*," as against a party, there must be an admission intended to influence the conduct of the man with whom the party is dealing, and actually leading him into a line of conduct which must be prejudicial to his interest, unless the party estopped be cut off from the power of retraction. (Per Cowan, Judge, Dasell v. Odell, 3 Hill, 219; Welland Canal Co. v. Halloway, 8 Wend., 780; Doe v. Oliver, Duchess of Kingston's Case, 2 Smith's Lead. Cases, 643–652, and 661–662; see also the case of Williams v. Chandler, decided by this court at the last term, [25 Tex., 4]; Lane v. Barber, 17 Tex., 318.)

We may remark, that it is more than probable the Pages and McGreal also thought, when this probate sale was made, in November, 1848, the whole of the headright league belonged, in law, to the husband to whom it was granted; for the decision of this court in the case of Houston v. Yates, determining that one-half of the head-

right of the colonist belonged to the wife, was not made till 1849, some months after this sale was made. We say, that it was the impression of very many that the head-right belonged exclusively to the husband, until the case of Houston v. Yates was decided, declaring and settling our law on the subject. The decisions in Louisiana, to which we had looked for the interpretation of our law of community property, had given the head-right to the husband. If such were the case, the Pages, by the authorities cited above, would not have been estopped, if it were true that they had stood by at the sale and had failed to forbid it. They must, in order to be estopped, make an admission intended to mislead, and it must mislead the opposite party.

And we submit that the charge of the district judge was wrong in this, viz:

If the Pages stood by and did not forbid the sale, whether they knew their legal rights or not, and whether McGreal was misled by this silence or not, still he would get their land, and this, too, under a sale which the record shows was made without authority, and was consequently null and void in law.

Let us suppose that the plaintiff was at the sale and did not forbid the same. And, further, suppose that he was thereby estopped. We submit that the defendents were likewise estopped by the recitals in the deeds under which they claim, and which they introduced as evidence, from denying the title of the plaintiff to one-half of the land, and from proving that they purchased at the sale the entire league. We may at least set off one estoppel with the other; this would set the matter at large. (See Carpenter v. Thompson, 3 N. H., 204.)

It was contended by the defendants, in the district court, that the plaintiff was estopped from claiming any portion of the land as the heir of Joseph W. Page, because he (said Joseph) had acted as one of the original appraisers

of the estate of Chase, and had appraised this league as a portion of said estate.  Had this been true, it would not have operated as an estoppel.  (Hard v. Cushing, 7 Pick. 169.)

It will be seen, by reference to the first inventory, that there is no certainty as to the league of land to which it relates; and estoppels are not favored in law.  (Leicester v. Rehoboth, 7 Mass. 180.)

An estoppel must be certain to every intent, and precise and clear.  (Lajoye v. Priman, 3 Miss., 529.)

We further contend, it was the intention of the first appraisers to appraise no more than one-half this league of land as the property of the estate.

It is described as " one undivided league of land, situated on the Lavaca, worth $2,222."

If the league was not to be divided, why say that it was undivided?

Why, it may be asked, did not the second appraisers describe this as an undivided league?

While one-half of the league had been appraised at $2,222 in 1843, how does it happen that more than six years thereafter the second appraisers, on the second day after their appointment, appraised the whole league at less than one-half that sum?

We further submit, that the court erred in refusing to give the instruction asked for by the plaintiff.

The record shows that William Chase died in 1843, when the probate law of 1840 was in force, and the sale was evidently made, as the petition for sale shows, under the act of 1848.  (Hart. Dig., Art. 1153.)

It may be said that the rights of the wife were fixed by the law of 1840, in force at the time of the death of the husband.  Their rights would not be enlarged or diminished by a subsequent act.  Besides, article 1183 shows that its provisions were not intended to apply to prior cases, and could not be made to apply to this.

We contend that the county court could not order a sale in this case under the act of 1840, for that only provides for the sale of property for the payment of debts; and, in this case, the petition for the sale shows the estate owed no debts.

It should not have been held under the act of 1848, for the case neither came within the terms nor meaning of the above-cited article of that act.

· We therefore submit, that the county court had no authority or jurisdiction to order the sale of this league under either act. This we say the record of the county court (which was introduced by the defendants in the district court) clearly shows. Least of all had the county court the right to order the sale of the half for which the appellant contends; for we submit that the petition for sale, and the grant which was referred to in it as a part thereof, show that it could not have belonged to the estate of William Chase.

When Mrs. Chase (the mother of the appellants) died, her half of the league descended immediately to her heirs, and in the administration of the estate of William Chase, who died some ten years thereafter, the probate court acquired no jurisdiction over her half of the league, and the petition for the sale shows that all the debts had been paid. (Withers v. Pattison, cited above.)

*W. G. Webb* and *S. S. Munger*, for Newell, argued several questions of practice. The court erred in sustaining objections to defendant, Newell, reading in evidence the certified copies of the deed from E. R. Rainwater to said defendant, taken from the records of deeds of Gonzales and Lavaca counties, as appears by bill of exceptions filed.

The objection upon which this deed was ruled out was that the same was witnessed by J. B. Hoskins and another, and J. C. Hoskins appeared before the chief justice and proved it up for record. This was a certified copy from

a record, and not the original deed, and the initial *B*. appearing in the same is a clerical error. For proof of this, it is sufficient to refer the court to the copy from Lavaca county. That is the same deed identically, but we find the name of the witness in that is J. *C*. Hoskins, and not J. *B*. Hoskins.

In the case of McKay *et al.* v. Speak, 8 Tex., 396, the court says: "A middle name or initial is not known in làw, and will not be noticed, unless it be made to appear that it has been the occasion of a different person than the one designed being injured thereby." (Early v. Sterret, 18 Tex., 116; see also Fulton v. Bayne, 18 Tex., 60; McKissick v. Colquhoun; 18 Tex., 148.)

In Gaines *et al.* v. Stiles, 14 Pet., 322, the point raised is, whether David Currick Buchanan and David Buchanan were the same. The court says: "The law knows but one christian name, and the omission or insertion of the initial or middle letter of that name is immaterial, and it is competent to show that he is known as well without as with the middle name." So in the case of Kesse v. Meade, 3 Pet., 1, a commission was issued in the name of Richard M. Meade, the name of the defendant being Richard W. Meade. The court says it was a clerical mistake, and further, "it is said the law knows of only one christian name, and there are adjudged cases strongly countenancing, if not fully establishing, that the entire omission of a middle letter is not a misnomer or variance," (see authorities quoted,) and, if so, a middle letter is immaterial, and a wrong letter may be stricken out or disregarded. But, aside from the authorities above quoted, and the previous argument on this point, the certificate of the judge of the county court or chief justice before whom the acknowledgment was taken concludes the matter, that it is a mistake of the clerk, and not a variance, if such it would be styled, for he certifies as follows: "Personally came and appeared before me, G. B. McKinstry, chief justice in and for the

xxix—5.

county aforesaid, J. C. Hoskins, one of the witnesses to the foregoing deed," &c. Now, is it not evident from the face of the instrument that the witness who signed the deed is the identical witness who proved the same for record?

*Robert L. Foard* and *John H. Robson*, for the defendants. The court did not err in the charge to the jury under the facts proved on the trial. It was proper and applicable, the defense relied on being that of an estoppel in *pais*. It is laid down in 14 Missouri, 482, that to establish such, there must be, first, an admission inconsistent with the evidence proposed to be given or the claim offered to be set up; second, action by the other party upon such admission; third, an injury to him, by allowing the admission to be disproved. (14 Mo., 482.)

This admission may be either by acts or declarations, as where one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act in that belief. (20 Conn., 563; 17 Conn., 138, 345.)

It is a general principle of equity, that where a person, with full knowledge of the facts on which his title to land is based, stands by and permits a purchase of the land by a purchaser, ignorant of his title, from a vendor without a title, he cannot afterwards set up ignorance of title in answer to the estoppel arising from his acquiescence in the sales. (8 B. Monr., 542; 6 B. Monr., 113; 1 Story's Eq. Jur., § 385, and authorities in note [5;] 6 Johns., 16; 7 Watts, 394; Willard's Eq. Jur., 150, and authorities cited in note [2] on said page.)

And in Maine it is held, that even ignorance of the true state of his own title at the time of the purchase will not enable him to avoid the estoppel. (Hatch v. Kimball, 16 Me., 146; Colley v. Norton, 19 Me., 412.)

The distinction has ever been taken between ignorance of law and ignorance of fact. Courts of equity will relieve

against the latter, but never against the former.   (Willard's
Eq. Jur., 59 to 64;  9 Barb., 532;  10 Barb., 9–16;  18 Wend.,
417.)

They then argued upon the facts to prove the acquies-
cence of the Pages.

The intervenor, Chester Newell, offered in evidence the
deed from Rainwater to him, recorded in Gonzales county,
and also the same deed recorded in Lavaca county.  Though
the bill of exceptions does not state that the defendants
objected to the introduction of these deeds, because Newell
had not made the affidavit required by law, before the cer-
tified copies of the deed could be introduced in evidence,
yet this objection was doubtless made in the court below,
and the defendants insist that they are entitled to urge this
objection in this court.    It was only on condition that the
affidavit was made, required by Art. 745, Hart. Dig., that
certified copies of the deeds could have been read in evi-
dence.    This was a condition precedent; and, not having
been performed, this court should presume in favor of the
ruling of the court below, that this was the chief objection
to the reading of the deeds in evidence.    A party makes
out his own bill of exceptions, subject only to the approval
of the judge.  It is an *ex parte* proceeding, so far as the oppo-
site party is concerned;  and the affidavit was not made in
the terms of the law.

The bill of exceptions states that the deed from Rainwa-
ter to Newell was rejected because it appeared to have been
witnessed by one J. B. Hoskins.

Now, it may be true that the judge or clerk was mistaken
in stating that J. C. Hoskins proved up the deed for record,
and that in law a party is entitled to but one christian
name; and, as this is an *ex parte* proceeding, it was neces-
sary that the very witness must have appeared before the
proper officer; if he did not know him personally, he could
and ought to have required an affidavit or proof of his
identity.    The deeds themselves, with proof of their exe-

cution, were the best evidence. The statute permits certified copies to be used in their stead on certain conditions. The party offering the copies must comply with the statute or conditions; if not, he has no right to complain. If it were a mistake in the middle name, it was the duty of the intervenor to show it. If this were a proceeding only affecting Hoskins himself, the discrepancy in the middle name could have made, perhaps, no difference; but this being an *ex parte* proceeding, a privilege and favor granted to a vendee by statute, and affecting the rights of third parties, he must pursue strictly the law; and no man can absolutely say that J. *C.* Hoskins, who proved up the deed for record, is the J. *B.* Hoskins who is the subscribing witness to the deed.

The objections to the reading of the deed from Rainwater to Newell, recorded in Lavaca county, as stated by the bill of exceptions, were, first, that the clerk of Lavaca county did not attach to the copy a certificate of registration in the terms of the statute, showing day and hour of its registration, and giving certificate and seal of office; and because the record did not show the certificate of registration from Gonzales county.

The court, on examination of this record, will find that the only certificate of the clerk of Gonzales county, if it were made by him at all, is as follows: " June 15, filed for record; September 4, 1844, recorded." This is not the certificate of filing and registration required by law. The officer neither signs his name thereto nor puts his seal thereto. (Hart. Dig., Art. 2797.) Besides, under Art. 2768, Hart. Dig., the certificate of proof of the deed by the judge of the Brazoria county court was not legal, there being no seal thereto, and the clerk of Gonzales county had no authority to file the deed for record.

For these reasons the deed was improperly recorded in Lavaca county by the clerk thereof, and the certificate of registration to the copy from Lavaca county, recorded in

said county by the clerk thereof, was imperfect, (Hart. Dig., Art. 2797,) in not giving the day and hour of registration, and giving certificate and attaching his seal thereto.

Moore, C. J.—The only assignment of error on behalf of the appellant, Page, the plaintiff below, which presents a question of importance, is that complaining of the charge given by the court to the jury. It may be generally said, in answer to the assignments which complain of the ruling of the court on appellant's exceptions to the testimony to which he objected, that as appellees relied, as a defense, upon an estoppel *in pais* to conclude appellant's recovery of the land for which he sues, they were entitled to show all the facts and circumstances of the dealing of appellant, and those under whom he claimed, with the land, from which the purchaser at the administration sale could probably have been induced to suppose that appellant had no title to the land, or admitted the legality and validity of its sale by administrator of Chase, the grantee. However slight and unimportant these circumstances were taken, either singly or in connection, it cannot be said they were altogether immaterial for the purpose for which they were offered, and might, indeed, if the other ingredients of such a defense were established, become of the utmost importance.

The first clause of the charge upon the subject of estoppel is certainly quite vague and indefinite, and it is difficult, if not impossible, to say precisely what is the legal principle intended to be announced by it. But the most favorable view, which it has occurred to us can be taken of it in favor of the judgment, is to regard it as a qualification on the remainder of the charge, in respect to the effect against his title of appellant's standing by at the administrator's sale. The entire charge upon this subject must be construed, if this is its proper construction, to the effect, that if appellant, for ten years after arriving at full age,

had failed to assert his right to the land, and was present at the sale, and knowing what was being done, and also that the sale was intended to embrace his half of the land, and he failed to make known his claim to it, he was thereby estopped from its recovery. Do these few naked facts, enumerated in this charge, operate as an estoppel, and preclude the owner from an assertion of his title from the purchaser? What are these facts? 1st, the failure to assert his title for a considerable period of time, although there is no adverse possession of the land; 2d, that he is silent, although present, and knows that the entire property is being sold by a part owner. We must not infer, however, that he is necessarily acquainted with the fact of his having a title or interest in the land, unless this is a conclusive presumption of law; for the charge asked by appellant, that his ignorance in this particular would relieve him from the effect of the estoppel, was refused by the court. Nor is any account taken of the administration by appellant's brother upon the estate of his mother, or his participation in the first appraisement of the land as the property of William Chase's estate, unless the evidence on these points is considered merely in support of the first clause of the charge.

During our late session at Austin, this doctrine of estoppels *in pais* was, in the cases of Burleson v. Burleson, [28 Tex., 383;] and Scoby v. Sweatt, [28 Tex., 713,] fully considered and somewhat elaborately discussed. In the first of these cases it was held, that the tacit presence of the owner, and his knowledge of the sale, will not estop him, if the purchaser is otherwise informed as to the true state of the title. And in the second, it was decided, that the acts from which the estoppel is claimed to spring, must have, in some way, induced or influenced the purchaser; that the basis upon which such estoppel rests is actual or constructive fraud on the part of the owner, or such facts as would be tantamount to a fraud, if he were permitted to recover the property. The facts from which the estoppel is now claimed are alto-

gether different from those there presented to the court;
but the ingredients constituting a valid estoppel *in pais*, as
defined in the instruction given the jury in this case, cer-
tainly fall far short of what was thought by this court to
be its essential elements in these cases.

There seems no reason to suppose that the appellant
was any better informed as to the character and legal
effect of the grant under which the administrator claimed
and sold the entire league of land than the purchaser.
If one is presumed to know its legal effect, so is the other.
The title showed the date of the grant.   Knowing it to be
community property, he was put upon inquiry as to the
parties interested in it.   If he were informed of appellants
interest, to have made it known to him at the sale, would
have furnished him with no additional information.  If he
did not know of it, appellant's presence at sale could not
have induced the impression of a waiver or abandonment
of his title, and could in no way have induced the purchase.

There are some cases, it is true, in which it has been
held, that if the owner be present, and sees another pur-
chasing with the erroneous belief that he is getting a good
title, and he fails to make known his claim, he will be
estopped from afterwards demanding the property.   But
upon a reference to the cases, it will generally be found
that the facts show some additional sanction or encourage-
ment of the purchase beyond the mere presence of the
owner.   (Rugelez v. Spring, 21 Me., 130; same case, 28
Me., 128 ; Hatch v. Kimball, 16 Me., 166.)

The true rule seems to be, and with it goes the later
and better considered cases, that the mere presence of the
owner, if he have concealed no fact of which he was in-
formed, and the purchaser could not have learned by the
use of reasonable diligence, will not create an estoppel,
unless the purchaser can show that he had reason to sup-
pose, from the presence of the owner, that he sanctioned
and acquiesced in the sale.

In the case of Boggs v. Murced, 14 Cal., 367, Chief Justice Field says: " It is undoubtedly true, that a party will, in many instances, be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The party is said, in such cases, to be estopped from denying the truth of his admissions. But to the application of this principle, with respect to the title of real property, it must appear, first, that the party making the admission, by his declaration or conduct, was apprized of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and, further, that he relied directly on such admission, and will be injured by allowing its truth to be disproved."

And in Hill v. Epley, 31 Pa., 334, it is said: "It is only when silence becomes a fraud that it postpones." And again : " The primary ground of this doctrine is, that it would be a fraud in a party to assert what his previous conduct had denied, when, on the faith of that denial, others have acted. The element of fraud is essential, either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up." (Dezell v. Odell, 3 Hill, 222; Otis v. Sill, 8 Barb., 102; Lawrence v. Brown, 1 Seld., 394; Morris v. Moore, 11 Humph., 433; Brewer v. Brewer, 19 Ala., 481; Clabaugh v. Byerly, 7 Gill., 384.)

The only qualification which seems necessary to the doctrine laid down in these cases is, that a party may be estopped by acts and declarations which were designed to influence another who has acted upon them, although both parties were ignorant that what is thereby represented is not true; for if one of two innocent parties must suffer, he through whose agency the loss occurred should sustain it.

It remains for us to consider the errors assigned by the intervenor.   The application for a continuance was properly annulled.  There was not such necessity shown for the presence of the absent counsel as to require a continuance. The other ground was obviated by the admission of the fact, which it was desired to prove, viz, that the county clerk of Brazoria county had no official seal in 1837.

The objection to the introduction of the release from the administration of Chase to McGreal, and the contract between McGreal and Arnim, was also properly overruled. But, in saying this, we are not to be understood as holding merely that the first was admissible as a recorded instrument, and the last as authenticated by the admissions of the parties to it, by whom it was offered; but, as there has been no argument to the points, we express no opinion as to the legal effect of the instruments, or as to the date at which the last must be held to take effect, in view of the manner in which it comes into court.

There was, however, manifest error in sustaining the objections made to the copy from the records of Gonzales county of the deed to Rainwater, under whom the intervenor claims.   The alleged discrepancy in the name of the witness to the deed and that of the party by whom its execution was proved before the officer who probated it for record was immaterial.   The certificate identified the party by whom the deed was proved as the same person who signed it as a witness, which would be sufficient to rebut the contrary presumption from the supposed difference in the initial letter of the middle name. It, is however, abundantly clear, that the alleged discrepancy is one of which the law takes no notice.   (McKay v. Speak, 8 Tex., 376; Mc-Kissick v. Colquhoun, 18 Tex., 148; Gains v. Stiles, 14 Pet., 222.)  As this copy of the deed should have been admitted in evidence, it is unnecessary for us to determine whether it was properly recorded in Lavaca county, and if the copy of that record should also have been received.

Nor is it necessary that we shall notice the questions presented by the remaining assignments of errors, as it is altogether improbable that they will arise on another trial.

For the error in the charge against the plaintiff, and for that in excluding the copy of the deed offered in evidence by the intervenor, the judgment as to both of them is reversed, and the cause

REMANDED.