Bourdon Rea BARFIELD, Trustee et al., Appellants,

v.

The HOWARD M. SMITH COMPANY OF AMARILLO, Appellee.

No. 7711.

Court of Civil Appeals of Texas.

Amarillo.

May 8, 1967.

Rehearing Denied June 5, 1967.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Jerome W. Johnson, Amarillo, of counsel, for appellants.

Simpson, Adkins, Fullingim & Hankins, Amarillo, W. P. Sturdivant, Amarillo, of counsel, for appellee.

CHAPMAN, Justice.

This suit originated in an action by appellants, Bourdon Rea Barfield as Trustee for the children of his brother, Oliver Eakle Barfield; the latter as Trustee for Bourdon Rea Barfield's children; and the parents of the two named trustees against appellee, Howard M. Smith Company, a retail clothing store corporation, seeking recovery of $32,800 allegedly due under a lease agreement between the parties. They will hereinafter be referred to as the Barfields and Smiths or appellants and appellee or by their respective names.

The lease agreement out of which the present controversy arose was executed June 12, 1958, for a term from August 1, 1958, through June 30, 1965. The previous lease under which they had been operating was entered into on November 3, 1952, for the period from January 1, 1953, through December 31, 1972. That lease did not terminate with the execution of the later lease, but was absorbed into the 1958 lease in controversy when 3,240 additional square feet of floor space constituting a part of the Barfield Building was leased adjacent to and incorporated into the floor space adjoining the Barfield Building represented by the 1952 lease.

The 1952 lease provided for a guaranteed base rental with additional rent based on

a sliding scale of percentage related to the gross sales in excess of $500,000 of the clothing store called "Hub Clothiers." In submitting the year-end reports required to be made forty-five days after the end of each year the Smiths incorrectly treated the $20,000 base rental of the 1952 lease as though it were a part of the percentage rental, including in their "Remittance Slip" an item reading "4% of $500,000 = $20,000." This was not in accordance with the terms of the lease, since no percentage rental was provided for on the first $500,000.

The 1958 lease provided for a base rental for the Barfield Building space of $4,800 a year, 3.67% of all gross sales in excess of $925,000 each year but not in excess of $1,150,000 attributable to the Barfield Building; and a sum of 2½% of all gross sales each year in excess of $1,150,000 attributable to the area covered by the prior lease. The percentages provided for in the 1952 lease below $925,000 were also allocated to the area covered by the 1952 lease.

The parties, before the 1959 payment, had operated under the 1952 lease for five months, paying ½₂ each month of the $20,000 base guarantee under the 1952 lease for seven months and $2,066.67 per month for the last five months. The latter figure was the monthly rent resulting from the base guarantee of $4,800 per year for the new space added to the monthly rent under the $20,000 base guarantee of the 1952 lease.

From 1959 through 1965 payments for each preceding year were made by deducting the sum total of the monthly prepayments from the total percentage rents. The payments on such basis were accepted by appellants and the "Remittance Slips" retained by them.

Prior to the expiration of the 1958 lease, appellants still having raised no objection to the method or amount of payments, the parties executed a third lease terminating on December 31, 1972. The third lease

was executed on August 1, 1964, some eleven months before the expiration of the 1958 lease. Subsequent to the expiration of the 1958 lease and subsequent to the execution of the 1964 lease, Bourdon Rea Barfield, who was managing the rentals for the Barfields raised, for the first time, a question concerning the method used by appellee in calculating rentals, which method had been used at least since 1952. He sought recovery of an additional $4,800 per year for 1958 through 1963 and $4,000 for 1964. The parties not being able to reconcile their differences, suit was filed for $34,800 and tried to the court. A take-nothing judgment was rendered and appellants requested findings of fact and conclusions of law.

From the various findings, the court concluded appellants were equitably estopped to recovery upon the contract as written; were barred by the four-year statute of limitation, Article 5527, Vernon's Ann.Tex. Civ.St., for the years 1958, 1959 and 1960; are barred by laches; and that B. R. Barfield, acting on behalf of the Barfield family, with full knowledge, or with sufficient notice or means of knowledge of their rights remained inactive for such length of time before repudiating the method employed by the Smiths for calculating the annual rentals under the 1958 lease agreement that the Smiths were induced to suppose such method was acceptable and the Barfields thereby acquiesced therein until " * * * such method is now unimpeachable."

None of the parties appear to find fault with the court's fact findings to the effect that the 1958 lease constituting the basis of this action was clear and unambiguous; that the manner in which the Smiths yearly calculated and paid the rentals on such lease was incorrect; that the parties prior to the execution of the 1958 lease did not mutually agree that they might be yearly calculated and paid in the manner in which they were calculated and paid for the operating years 1958 through 1964; and that the parties did not as a result of mutual

mistake believe at the time the 1958 lease was executed that it provided for the computation of annual rentals in the manner in which they were subsequently calculated by the Smiths.

By their first point of error appellants contend the court erred by entering a defendant's judgment based upon equitable estoppel.

Among the numerous other facts found by the trial court is Fact Finding No. 6 as follows:

"That BOURDON REA BARFIELD knew not later than February of 1959, that the defendant in computing the yearly rental due at the end of each lease payment period deducted the sum total of the monthly prepayments from the total percentage rents, in arriving at the year end balance due to plaintiffs and that this was inconsistent with the clear and unambiguous terms of the lease agreement of June 12, 1958."

These findings of fact just quoted having not been challenged are binding on our court. Murphy v. Boyt, 180 S.W.2d 199 (Tex.Civ.App.-Amarillo, 1944, writ ref'd w. o. m.); Laredo Brick Co. v. Urdiales, 263 S.W.2d 332 (Tex.Civ.App.-San Antonio, 1953, no writ); Waters v. King, 353 S.W.2d 326 (Tex.Civ.App.-Dallas, 1961, no writ); Browne v. General Electric Company, 402 S.W.2d 957 (Tex.Civ.App.-San Antonio, 1966, writ dism'd); Saner-Whiteman Lumber Co. v. Texas & N. O. R. Co., 282 S.W. 267 (Tex.Civ.App.-Galveston, 1926, rev'd on other grounds).

In the last cited case the Galveston court said, " * * * this finding of fact is not complained of in any assignment presented by appellant, and is therefore binding upon this court, regardless of what the evidence may be on the issue." Whether the quote just made is a correct statement of the law or not is actually immaterial here because there is probative evidence in the record to support the trial court's findings of fact above quoted. The record shows B. R.

Barfield is a 1951 graduate of the University of Texas School of Business Administration; has been active in supervising extensive business interests in which his family has been involved, including lease negotiations on the multi-storied Barfield Building; assisted in negotiating the 1952 lease and discussed with his father in 1952 and 1953 that appellee was using a method of calculations in paying the yearly rentals not provided for in the contract lease; negotiated the 1958 lease but did not mention to appellee that the method of calculations on the annual rental payments were contrary to their lease contract, but continued to accept such payments on the same method of calculations the Smiths had been using at least since 1952. In fact, he discussed with Harold Smith in the early 1960's his disappointment in the decline of rentals. He was furnished the method of calculations at each annual payment date for his records, had the original of the lease agreement, and admitted, in effect, that there was not anything else the Smiths could have furnished him that would have added any information to their method of calculations.

In Fact Finding Nos. 7 and 8 the trial court also found as follows:

"That BOURDON REA BARFIELD subsequent to January, 1959, had possession of information, to-wit, annual statements furnished to him by the defendant, sufficient to cause a reasonably prudent man similarly situated to make inquiry concerning the method used by the defendant in computing the balance of rent due plaintiffs at the end of each year.

"That if BOURDON REA BARFIELD had made such inquiry and had pursued such inquiry with ordinary diligence, it would have disclosed to BOURDON REA BARFIELD that the method of computation used by the defendant in computing the balance of rent due annually after taking into account monthly prepayments resulted in an amount different than would have resulted if the

computation had been made pursuant to the clear and unambiguous terms of the lease agreement of June 12, 1958."

■ We have been unable to find in appellants' argument under their first point any challenge to the facts found by the trial court under Fact Finding No. 6. Since we are bound by the findings therein if they are supported by the evidence and unchallenged, we must determine if they support the judgment rendered. The cases above cited support the rule that our court is bound by findings of fact unchallenged, if supported by probative evidence. We hold the trial court correctly entered judgment for appellee based upon the doctrine of equitable estoppel under the authority of Champlin Oil & Refining Company v. Chastain, 403 S.W.2d 376 (Tex.1965).

A study of the case just cited makes it obvious that the Supreme Court of Texas did some searching agonizing with the law books before the opinion was finally announced, since there are two written majority opinions, one written concurring opinion joined in by a member of the majority and two dissents, the first dissent to the first majority opinion and the second by the Chief Justice to the majority opinion written "On Rehearing."

Appellee contends by brief that appellants' Points 2 and 3 should be stricken because they waived their right to have them considered by us in failing to secure findings of fact or conclusions of law pertaining thereto and in failing to object to the trial court's not having made findings thereon. Rather than passing upon the validity of that question we prefer to consider all the points together involving equitable estoppel.

■ The Court in the Chastain case just cited held that under certain circumstances one having the means of knowledge may be held to the same standard of responsibility as one possessing conscious knowledge; that the authorities substantially all agree upon the general proposition

that: (1) to create an estoppel the conduct of the party need not consist of affirmative acts or words, but it may consist of silence or negative omission to act when it was his duty to speak; (2) it is not necessary that the facts must be actually known to the party estopped, if the circumstances are such that a knowledge of the truth is necessarily imputed to him; (3) it is not necessary that the conduct be done with a fraudulent intention to deceive, or with actual intention that such conduct will be acted upon by the other party but it is enough that the conduct was done under such circumstances that he should have known that it was both natural and probable that it would be so acted upon.

■ The Court then stated that Texas authority has determined that imputed actual notice carries with it the same legal consequences as conscious knowledge, citing Hexter v. Pratt, 10 S.W.2d 692 (Tex. Comm'n App.1928) and stating that the Hexter case was cited with approval by their court in Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286 (1951). In citing the Hexter case as authority the Court quoted from it as follows:

" 'Notice in law is of two kinds—actual and constructive. * * * In common parlance "actual notice" generally consists in express information of a fact, but in law the term is more comprehensive. In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. Means of knowledge with the duty of using them are in equity equivalent to knowledge itself. * * * So that, in legal parlance, actual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed.' "

On rehearing the Court defined specifically the issue to be resolved by stating " * * * the test would be to inquire if Chastain prior to March 1, 1961, was in possession of information which would cause a reasonably prudent man, similarly situated to Chastain, to make inquiry, which inquiry if pursued with ordinary diligence would have disclosed that the plant formula in actual use was a different formula from that prescribed in the Natural Gas Processing contract," the exact finding made by the trial court here in its Finding No. 8, when applied to the facts of our case.

The findings of fact made by the trial court in our case, supported by the evidence, appear to us to make it a more classic example for the application of the doctrine of equitable estoppel than the facts with which the Court dealt in the Chastain case. The jury there made a negative finding to the issue inquiring if the one against whom equitable estoppel was applied by the Court (Chastain) knew prior to the time he was advised legally that the allocation method used by the defendant was different from the allocation formula described in the Natural Gas Processing Agreement. Whereas, in our case the fact finder (the trial court) found those against whom equitable estoppel was applied knew during all the period for which recovery was sought that the method used in paying yearly rentals was inconsistent with the the terms of the lease agreement.

It appears to us that Finding of Fact No. 6 meets the principal objections made in Mr. Justice Pope's and Chief Justice Calvert's written dissents. The former stated:

> "Ordinarily the one (Chastain) [the Barfields here] against whom the estoppel operates is the one who is possessed of knowledge and who, by force of his knowledge, takes some advantage of him (Champlin) [the Smiths here] who does not have it."

Chief Justice Calvert stated in his dissent that:

> "Mr. Justice Pope has cited a number of Texas decisions in his dissenting opinion in which our courts have declared that a duty to speak arises out of actual knowledge of the facts. See Hallmark v. United Fidelity Life Ins. Co., 155 Tex. 291, 286 S.W.2d 133 (1956); Williams v. Texas Employers Ins. Ass'n, Tex.Civ. App., 135 S.W.2d 262 (1940), writ refused; Moore v. Carey Bros. Oil Co., Tex.Com.App., 272 S.W. 440, 39 A.L.R. 1247 (1925)."

The trial court also found as facts that B. R. Barfield after having the knowledge that the method of computation resulted in an amount different to that which would have resulted had the clear and unambiguous terms of the lease been applied, lead appellee by his acts, conduct and silence reasonably to believe that appellants approved of the method used in calculating the annual rental payments; that appellees relied upon such acts, conduct and silence; that but for such acts, conduct and silence appellee would not have executed the August 1, 1964, lease agreement and would have taken action to set aside the June 12, 1958, lease prior to August 1, 1964; that but for such acts, conduct and silence, appellee would have made arrangements for other facilities for housing that portion of their business located on the premises in the Barfield Building prior to August 1, 1964; that the owners and managers of appellee as ordinary and prudent persons were induced to believe that the method they employed in calculating yearly rentals was accepted by Bourdon Rea Barfield on behalf of appellants; that appellants delayed an unreasonable length of time to assert the claim in question; that appellee did not know appellants would assert the claim prior to the time it was asserted; and that during the time appellants failed to assert their claim appellee changed its position by executing the August 1, 1964, lease, failed to make arrangements for moving off the premises located in the Barfield Building, failed to take any action to cancel the 1958 lease and thereby changed its position in such

a way that it would be unjust for appellants to now assert its claim.

It is true the trial court made no finding whatever of appellee's knowledge of error in the method of payment but no request is shown in the record for such finding. The record does show by the testimony of Harold Smith, one of the managers of the clothing store and the one who apparently handles the principal part of the office business of the institution, that it did not come to his knowledge that the method of calculating the rentals under the 1952 lease was erroneous; that they agreed to pay a minimum rental of $4,800 per year on the area within the Barfield Building in equal monthly payments and that it was their understanding that the lease provided for percentages to be applied to the gross sales from both areas, which would be the total amount of rental and from which would be deducted the minimum or guarantees; that his understanding was that they were to pay a $4,800 yearly guarantee on the area within the Barfield Building regardless of the volume of gross sales; that it had always been his understanding that he would take the volume of sales and apply the percentage, from which the guarantees would be deducted and the guarantee and the difference would be paid; that he never understood that any payment was to be made contrary to the method he employed in calculating the annual rentals, or he would have acted differently; that he would not have executed the lease agreement of August 1, 1964, for the period from July 1, 1965, to December 31, 1972, and would not have exercised his option to continue his business beyond the termination of the 1958 lease had he known there was any controversy concerning the amount of the payments that were to be made; and that as a layman he failed to understand the lease. The record shows that appellants' attorney drafted the lease. So, even had a request been made for such findings, there is no probative evidence from which the court could have logically concluded appellee had actual knowledge of its error in calculating the rents.

It is also true that Bourdon Rea Barfield testified that prior to the statement in the "Remittance Slip" for 1964 made in 1965 he had no notice of the understatement of rentals due. The trial court obviously rejected such testimony. She had the authority to do so. American Bankers Insurance Company v. Farley, 403 S.W.2d 545 (Tex. Civ.App.-Fort Worth, 1966, no writ); Redman v. Bennett, 401 S.W.2d 891 (Tex. Civ.App.-Tyler, 1966, no writ); Ambrose & Co. v. Hutchison, 356 S.W.2d 215 (Tex. Civ.App.-Fort Worth, 1962, no writ); Ryals v. Garza, 264 S.W.2d 548 (Tex.Civ. App.-Dallas, 1953, writ ref'd n. r. e.); Brown v. Wright, 356 S.W.2d 849, (Tex.Civ. App.-San Antonio, 1962, writ dism'd).

█ It is a well settled rule that an appellate court will not disturb the facts found by the trial court if there is some evidence of probative force to support them, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to the judgment rendered. American Bankers Insurance Company v. Farley, supra; Liedeker v. Grossman, 146 Tex. 308, 206 S.W.2d 232 (1947); Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (1951); Wilson v. Teague Independent School Dist., 251 S.W.2d 263 (Tex.Civ.App.-Waco, 1952, writ ref'd); Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684 (1959); Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286 (1951).

█ It is also the established rule that fact findings may embody inferences deducible from the evidence, American Bankers Insurance Company v. Farley, supra, and should be overruled only when they are not supported by any probative evidence or are so against the weight and preponderance of the evidence as to be manifestly wrong. Bavousett v. Bradshaw, 332 S.W.2d 155 (Tex.Civ.App.-Amarillo, 1959, writ ref'd n. r. e.); Keeton v. Gillam Soap Works, 215 S.W.2d 675 (Tex.Civ.App.-Amarillo,

1948, writ ref'd n. r. e.) ; Donnell v. Acker, 343 S.W.2d 718 (Tex.Civ.App.-Houston, 1961, no writ).

Under the facts above related and the inferences fairly deducible therefrom and from the fact findings made by the trial court, we hold appellants' four points addressed to the asserted error in sustaining the defense of equitable estoppel show no reversible error. The findings and conclusions made by the court on laches and limitations are serious questions but in view of what we have held, we do not consider it necessary to discuss them.

We consider the instant case stronger in support of equitable estoppel than the Chastain case because of the finding by the trial court in the instant case of actual knowledge of payments (by the ones against whom estoppel was applied) different to the provisions of the lease contract. Findings by the majority in Chastain of imputed knowledge appear to form many of the grounds prompting the dissents.

Accordingly, the judgment of the trial court is affirmed.