**Bourdon Rea BARFIELD, Trustee, et al., Petitioners,**

v.

**The HOWARD M. SMITH COMPANY OF AMARILLO, Respondent.**

No. B–382.

Supreme Court of Texas.

March 27, 1968.

Rehearing Denied May 1, 1968.

Underwood, Wilson, Sutton, Heare & Berry, Jerome W. Johnson, Amarillo, for petitioners.

Simpson, Adkins, Fullingim & Hankins, Wayne Sturdivant, Amarillo, for respondent.

GRIFFIN, Justice.

This is a suit to recover sums of money allegedly due under a lease agreement. Petitioners were the plaintiffs and respondent was the defendant. The parties will hereinafter be referred to as petitioners and respondent, respectively. The trial court entered judgment that the petitioners take nothing by their suit, and the Court of Civil Appeals affirmed. 415 S.W.2d 667.

The lease agreement out of which this controversy arose was executed June 12, 1958, for a term from August 1, 1958, through June 30, 1965.

The respondent has operated a clothing store on Polk Street in Amarillo for a number of years. Prior to the lease in question the respondent operated its business in a building at 604–6 Polk, leased from the petitioners under an agreement executed November 3, 1952, for a term from January 1, 1953, to December 31, 1972. That lease provided for a base rental of $20,000.00 per year, payable monthly in advance, and an additional rental based upon a percentage of gross sales during the calendar year as follows: three and one half per cent (3½%) of gross sales in excess of $500,000.00 but not to exceed $800,000.00; three per cent (3%) of gross sales in excess of $800,000.00 but not to exceed $1,000,000.00; and two and one-half per cent (2½%) of gross sales in excess of $1,000,000.00. The respondent was to make an accounting of these additional rentals at the end of each year and remit the amount due less certain credits for taxes, insurance and other matters paid for by the respondent as lessee. It is undisputed that in its accounting at the end of each year under this lease the respondent added to the percentage rentals four per cent (4%) of $500,000.00 or $20,000.00 and then subtracted the amount of the advance payments on the base rental ($20,000.00) to arrive at the amount of the additional rentals due under the lease. It is also undisputed that the $20,000.00 payments per year were a fixed base rental and not intended necessarily to be 4% of $500,000.00, but since the amount was both added in and subtracted out, it had no effect upon the payment of the correct amount of rental due. The same amount was paid as though the respondent had simply figured the percentages on the gross sales in excess of $500,000.00 and remitted that in addition to the $20,000.00 base rental, as called for in the lease. All rentals due under the provisions of the 1952 lease were paid in full.

The petitioners also owned the building next to the one being used by respondent under the 1952 agreement. On June 12,

1958, the lease in controversy was executed between the petitioners and respondent, whereby the respondent would lease an additional 3,240 square feet in the adjoining building, to be operated as a part of the whole business. This lease provided that there should be a base rental of $4,800.00 per year, payable monthly in advance upon this additional space. The lease provides that since the whole space is to be operated as one business and the gross sales under the 1952 lease up to this time had been in the neighborhood of $925,000.00, the additional rentals after payment of the $20,000.00 base rental in the 1952 lease and the $4,800.00 base rental in the 1958 lease would be computed as follows: three and one-half per cent (3½%) of gross sales in excess of $500,000.00 but not to exceed $800,000.00; three per cent (3%) of gross sales in excess of $800,000.00 but not to exceed $925,000.00; 3.67% of gross sales in excess of $925,000.00 but not to exceed $1,150,000.00; and two and one-half per cent (2½%) of all gross sales in excess of $1,150,000.00. The lease also provided that the additional rentals figured at 3.67% of the gross sales between $925,000.00 and $1,150,000.00 were to be allocated to the additional space, and when added to the base rental of $4,800.00 would constitute the total rent on that area.

Again it is undisputed that when the respondent made its accounting on the additional rentals at the end of the year it continued to add to the percentage rentals 4% of $500,000.00 or $20,000.00, but now it began subtracting a credit of $24,800.00 ($20,000.00 in monthly rental payments under the 1952 lease and $4,800.00 in monthly rental payments under the 1958 lease.) This method brought about a deficit of $4,800.00 in the yearly rentals because this $4,800.00 was not being added in as a percentage rental as was the $20,000.00 but was being subtracted from the total as a credit. This method was incorrect under the terms of the lease.

On August 1, 1964, a third lease covering the additional space was executed with a term from July 1, 1965 to December 31, 1972, in exactly the same terms as the 1958 lease. On or about October 1, 1964, the petitioners lost possession of the building covered by the 1958 and 1964 leases, due to the foreclosure of a mortgage. It appears that when the additional rentals were rendered at the end of 1964 the petitioners first became aware that the method of computation used by the respondent resulted in the petitioners receiving less rentals than provided for in the 1958 lease. The petitioners brought this suit alleging that they were entitled to the base rent of $4,800.00 per year for the years the 1958 lease was in effect, and which because of respondent's method of computation they had failed to receive.

Respondent's defenses to petitioner's claim were that because of a mutual mistake the 1958 lease failed to state what was intended by the parties and therefore, the lease should be reformed; that the petitioners were barred from asserting a claim to all or a part of the unpaid rentals for the years 1958–1964 by equitable estoppel, laches and the two or four-year statutes of limitation. It is undisputed that under the terms of the 1958 lease petitioners should have received the rentals which are involved in this suit.

Trial was to the court without a jury. The trial court, upon express findings of fact and conclusions of law, held that the terms of the 1958 lease were clear and unambiguous and there is no basis for reforming the lease; but that the four-year statute of limitations barred petitioners' claim for unpaid rentals in the years 1958, 1959, and 1960; that petitioners are equitably estopped from asserting any claim; and also that petitioners are barred by laches. The Court of Civil Appeals concluded that the findings of fact made by the trial court are supported by some evidence and are sufficient to support the judgment on the theory of equitable es-

toppel under the holding of Champlin Oil & Refining Co. v. Chastain, Tex.Sup., 403 S.W.2d 376 (1965), and on that theory affirmed the trial court without passing on any of the other holdings of the trial court.

■ This Court recognized in the Champlin case, supra, that each case in which equitable estoppel is sought to be applied must rest upon its own facts. The Court of Civil Appeals in the case before us was of the opinion that the facts in this case brought it within the holding of the Champlin case. In this we hold that the Court of Civil Appeals erred.

Respondent, in its brief in this Court, contends that the lower courts correctly held that petitioners are equitably estopped from asserting their claim because there are findings of fact supported by the evidence that: petitioners had knowledge or imputed knowledge that the method employed by respondent was not correct and the rentals were being underpaid; petitioners' failure to advise respondent of the error, reasonably led it to believe that the method it used was correct and the rentals were being properly paid; and respondent relied on such conduct of petitioners to its detriment.

■ To sustain estoppel against petitioners, the only acts or conduct relied upon by respondent are that petitioners failed to advise it that it was using an improper method and that the rentals were being underpaid. Silence can be the basis for an estoppel, where there is a duty to speak. Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582 (1912). The burden of proving an estoppel and the essential elements thereof is on the party asserting it and the failure to prove any one or more of the elements is fatal. Concord Oil Co. v. Alco Oil & Gas Corp., Tex.Sup., 387 S.W.2d 635 (1965); Grinnan v. Dean, 62 Tex. 218 (1884).

Petitioners argue that the Court of Civil Appeals and the trial court erred in holding that they were estopped to assert their claim because respondent had knowledge, or the means of acquiring knowledge, of the truth of all matters which form the basis of the estoppel.

■ A party claiming an estoppel must have used due diligence to ascertain the truth of the matters upon which he relies in acting to his detriment. Champlin Oil & Refining Co. v. Chastain, Tex. Sup., 403 S.W.2d 376 (1965); Houston & T. C. R. Co. v. Paris Milling Co. (Tex. Civ.App., 1922), 240 S.W. 638, no writ. One of the requirements of estoppel is that the party claiming the estoppel was without knowledge, or the means of acquiring knowledge, of the facts which the party to be estopped is alleged to have represented by his acts, conduct or silence. Richey v. Miller, 142 Tex. 274, 177 S.W.2d 255 (1944); Page v. Arnim, 29 Tex. 53 (1867); Hunt v. W. O. W. Life Ins. Soc. (Tex.Civ.App., 1941), 153 S.W.2d 857, writ refused. "[W]here the real facts were known to a person or were open for his convenient ascertainment, he was not justified in relying on representation pertaining thereto and he cannot effectively say that he was misled or deceived by such representations." 31 C.J.S. Estoppel § 71b, page 433. See also Grinnan v. Dean, 62 Tex. 218 (1884); Logan v. Aiken (Tex.Civ. App., 1939), 123 S.W.2d 401, writ dismissed, judgment correct. This Court in Richey v. Miller, supra, stated that in such a situation there is in truth no material representation or concealment of any fact. The record in this case shows that respondent had a copy of the lease, which the trial court held was clear and unambiguous, and prepared the annual statements in which the improper method of computation was used. Respondent had the means of knowing that it was using the wrong method and underpaying rentals. In the absence of fraud, misrepresentation or mistake, a party is charged with having known the legal effect of a contract voluntarily made. Indemnity Ins. Co. of North America v. W. L. Macatee

& Sons, 129 Tex. 166, 101 S.W.2d 553 (1937). There is no showing of any fraud or misrepresentation by petitioners which would prevent respondent from knowing the legal effect of this lease, and the trial court found there was no mistake. Respondent had the means of knowing that it was breaching its contract and underpaying the rentals. Petitioners' silence on these matters was not a representation that respondent was using the correct method upon which respondent was justified in relying.

■ Further, respondent would not have been justified in relying upon petitioners' silence as a representation that petitioners agreed to and acquiesced in the method employed by respondent in figuring rentals due. There is no showing that respondent ever questioned the legal effect of the lease instrument either in 1958 or 1964. The record shows that there were numerous contacts between the parties and yet respondent never raised any question of a change in the contract obligations. Respondent had adequate and convenient means of discovering whether petitioners did in fact acquiesce in the use of the method employed by respondent before the time respondent alleges it changed its position in reliance upon such belief. This record clearly shows that respondent could have made inquiry of petitioners on their acquiescence in the use of an improper method of computing rentals, and it fails to show any act of petitioners which prevented respondent from knowing the truth about this acquiescence. There can be no estoppel when the party claiming the estoppel "conducts himself with careless indifference to means of information reasonably at hand or ignores highly suspicious circumstances which should warn him of danger or loss." 31 C.J.S. Estoppel § 71b, page 435; City of Tyler v. Bruck (Tex. Civ.App., 1954), 267 S.W.2d 429, writ ref'd n. r. e.

Respondent relies on the case of Champlin Oil & Refining Co. v. Chastain, Tex. Sup., 403 S.W.2d 376 (1965), as authority supporting the trial court's holding on estoppel. That case is not controlling of our case. In that case, this Court reached the result it did by virtue of Champlin's letter to Chastain, and the Court held Chastain was put on notice by the letter that Champlin was using a formula different from the contract formula to pay Chastain for his products. In this letter Champlin told Chastain that unless he notified Champlin to the contrary it would proceed upon the belief that Chastain acquiesced in use of such formula. There are no similar facts in the case at bar.

Since respondent has the burden of showing that the essential elements of estoppel are present in this case, it must show that any representation or concealment of a material fact by petitioners was without its knowledge or means of knowledge of those facts. Respondent has failed to make such a showing in this case. We are of the opinion that petitioners' contention that the Court of Civil Appeals and the trial court erred in holding that petitioners are estopped to assert their claim for the unpaid rentals must be sustained.

■ Petitioners also contend that the trial court erred in holding that Article 5527 Vernon's Ann.Tex.Civ.St. barred petitioners' claim for payments due for the years 1958, 1959 and 1960. This claim is without merit. It is argued that there was such a relationship of trust and confidence between the parties shown here as has been held under the cases to prevent the running of the statute of limitations until a party asserting a right had actual knowledge of that right. Baker v. Cook (Tex.Com.App., 1929), 15 S.W.2d 600, holding approved by the Supreme Court. The relationship between these parties which is shown by the record is that there had been a long course of dealing between them, and the respective families had been friends for a number of years. This record shows no more than an arm's length business transaction between friends and does not fall within

the exception asserted by petitioners. Consolidated Gas & Equipment Co. of America v. Thompson, Tex.Sup., 405 S.W.2d 333 (1966).

Having determined that the judgment of the Court of Civil Appeals cannot be affirmed upon the ground of estoppel, we must determine if there are other proper grounds upon which it can be affirmed.

The trial court found that petitioners had delayed an unreasonable time in asserting their claims and therefore they are barred by laches. Petitioners contend that laches does not apply in a case such as this, to limit a cause of action to a shorter time than that provided by the statute of limitations. Petitioners' claim for any unpaid rentals in the years 1961, 1962, 1963 and 1964 were not barred by the statute of limitations and to uphold the trial court's judgment we must hold that these claims were barred by laches.

■ Generally in the absence of some element of estoppel or such extraordinary circumstances as would render inequitable the enforcement of petitioners' right after a delay, laches will not bar a suit short of the period set forth in the limitation statute. K & G Oil Tool & Service Co., Inc. v. G & G Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782 (1958); Culver v. Pickens, 142 Tex. 87, 176 S.W.2d 167 (1944). Having determined that there is no estoppel in this case, we must now decide whether there has been a showing of such extraordinary circumstances as would justify the application of laches to bar all of petitioners' demands.

■ The only change of position found by the trial court is that but for the petitioners' delay in asserting their rights, respondent would have: voluntarily taken some action to set aside the 1958 lease; made arrangements for other facilities to house that portion of its business located on the premises covered by the 1958 lease;

and would not have executed the 1964 lease. We hold that under the facts of this case these are not such circumstances as would make it inequitable to allow petitioners to assert their claim for any unpaid rentals under the 1958 lease not barred by the statute of limitations.

■ It is undisputed that respondent voluntarily entered into both the 1958 and 1964 leases. The trial court found that the provisions of the 1958 lease were clear and unambiguous and there had been no mutual mistake. As a party to arm's length business transactions, respondent had a duty to use ordinary care for the protection of its own interests and is charged with knowledge of all facts which would have been discovered by a reasonably prudent person similarly situated and also charged with the legal effect of any instrument it signed. Thigpen v. Locke, Tex.Sup., 363 S.W.2d 247 (1962); Indemnity Ins. Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553 (1937). If respondent had been diligent in protecting its own interest, it should have known that under the terms of both the 1958 and 1964 leases which it signed, petitioners were entitled to more rent than respondent was paying under the method of computation being used, and that the use of that method would breach the contract. The circumstances of this case are no more extraordinary than any case where a party has delayed in asserting a contractual right for a period of time less than the statute of limitations allows, and there is nothing inequitable in refusing to apply the doctrine of laches to petitioners' claim before the statute of limitations has run. The contention that the trial court erred in holding the petitioners' claim for the unpaid rentals for the years 1961, 1962, 1963 and 1964 were barred by laches must be sustained.

The judgments of both courts below are reversed and this cause is remandad to the trial court for entry of judgment in accordance with this opinion.