George W. SIBLEY, M. D., Appellant,

v.

HORN ADVERTISING, INC., Appellee.

No. 18248.

Court of Civil Appeals of Texas,
Dallas.

Jan. 24, 1974.

Rehearing Denied Feb. 21, 1974.

John D. Gilliland, Vaughan, Gilliland & Cates, Dallas, for appellant.

Bill Jones, McKool, Jones, Shoemaker & Vassallo, Dallas, for appellee.

GUITTARD, Justice.

This case involves the small-offering exemption of the Texas Securities Act and the disclosure requirements of both Texas and federal securities acts. We hold that the offering in question was exempt from registration and that nondisclosure of material information has not been established.

The suit was brought on a subscription agreement for $10,000, the amount subscribed by defendant to stock in a new corporation. Defendant pleaded invalidity of the transaction because of failure to register the stock with the Texas Securities Commissioner and because of misrepresentations and failure to disclose material information required by both state and federal acts. The misrepresentation issue was tried to a jury, and no misrepresentation was found. No other issues were submitted. Defendant moved for judgment notwithstanding the verdict on the ground that the agreement was invalid as a matter of law because of failure to register and failure to disclose material information. The trial court overruled this motion and rendered judgment against defendant for the amount subscribed. We affirm.

The facts on this aspect of the case are without substantial dispute. Keith Laseter and Robert Fanning, an attorney, were promoters of Computer Saver Services, Inc., a corporation organized for the pur-pose of providing a computerized bookkeeping service for personal financial affairs. The principal expense projected for beginning the business was for an advertising campaign, and the primary purpose of selling stock was to raise money for the campaign. No more than twenty prospective subscribers were contacted. Each of these prospects, including defendant, was personally known to Fanning, who contacted them by telephone and made appointments for Laseter to see them. Laseter was president of the corporation. He presented to each of the prospects a four-page, typewritten "confidential memorandum" explaining the need for the service, the method of operation, the proposed advertising program, the method of financing, the projected returns, and an explanation of the speculative nature of such an untried venture. Laseter used a "flip chart" in presenting to the prospects the material contained in the "confidential memorandum," and he also showed the prospects an advertising piece prepared for mailing to prospective customers. Laseter testified that he made the same presentation to defendant George W. Sibley.

Defendant Sibley, a physician, testified that he first learned about Computer Saver Services, Inc., from Fanning in Fanning's office, that Fanning recommended Laseter, who subsequently came to see him, that he talked to Laseter between patients, that while Laseter was there he called Fanning on the telephone and talked with him about the venture, that he had had previous dealings with Fanning and thought Fanning was acting in his interest and doing him a favor, and that he signed the agreement without reading it and without seeing the "confidential memorandum." Defendant testified further that he was familiar with securities and stock transactions from his own personal investments, that he had been involved in privately held or closed corporations, that he had other dealings with Fanning in a privately held corporation, and that he had had maybe a thousand business transactions since leaving medical

school. The stock in question was not registered with either the Texas Securities Commissioner or the Securities and Exchange Commission. According to Laseter, both he and Fanning had options to purchase additional shares. These options were not mentioned in the "confidential memorandum," and defendant testified that he did not know about them.

All but one or two of the prospects solicited signed subscription agreements, and all paid except defendant. A total of $65,000 was raised, of which $40,000 was spent on advertising. The venture was not successful, however, and the corporation folded. Defendant never paid his subscription, which was assigned to plaintiff, an advertising agency which had participated in the campaign.

### 1. *Registration under Texas Securities Act*

Our first question is whether the stock mentioned in the subscription agreement was exempt from registration under § 5(I) of the Texas Securities Act, Tex.Rev.Civ. Stat.Ann. art. 581-5(I) (Vernon 1964), which provides that the Act shall not apply to sale of any security by the issuer so long as the total number of security holders does not exceed thirty-five persons, "[p]rovided such sale is made without any public solicitation or advertisements." The Act contains no definition of "public solicitation" or "advertisements." In Tumblewood Bowling Corporation v. Matise, 388 S.W.2d 479 (Tex.Civ.App.—Beaumont 1965, writ ref'd n. r. e.) an offering of stock to two hundred and fifty people, of whom less than thirty-five purchased, was held to be a "public solicitation." The court said that this term does not mean that the offer must be made to the entire world, citing SEC v. Ralston Purina Co., 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953), in which a similar interpretation was given to the exemption for transactions "not involving a public offering" in § 4(1) of the Securities Act of 1933, 48 Stat.

77 as amended, 48 Stat. 906 (now found in 15 U.S.C.A. § 77d(2) (1971)). In that case the Supreme Court denied the exemption to an offering limited to employees of a large corporation, several hundred of whom purchased stock each year, saying that the Act must be construed in the light of its purpose to protect potential investors by promoting full disclosure of information necessary to informed investment decisions, and that applicability of the exemption should turn on whether the particular class of persons affected needs the protection of the Act. Illustrating this construction, the Court observed: "An offering to those who are shown to be able to fend for themselves is a transaction 'not involving any public offering.'"

■ We hold that a similar construction of "public solicitation" in the Texas Act is proper and brings this case within the exemption. Defendant was solicited because of his personal acquaintance with attorney Fanning, and he agreed to buy the stock because of that relationship. He was "able to fend for himself" since he was an experienced investor and had personal experience with Fanning in privately-held corporate ventures. The offering was limited, and defendant was a major subscriber. He was dealing directly with Laseter, the president of the corporation, and was in contact with Fanning, the other principal promoter. He had ample opportunity to pursue with them whatever inquiry he considered necessary to an informed investment decision. Apparently he was not satisfied with the information presented by Laseter, but called Fanning and obtained his personal assurance about the venture. The jury found that Fanning made no misrepresentation, and defendant does not attack that finding. We conclude that these circumstances do not establish a "public solicitation."

■ We hold also that the "confidential memorandum" and other written materials used by Laseter were not "advertisements" within the meaning of § 5(I).

The materiality of the "confidential memorandum" is questionable, since defendant testified that he never saw it, but even if we disregard his testimony in that respect, the most his evidence shows is that the material was presented in personal interviews to no more than twenty selected acquaintances of one of the promoters. Thus, the case differs from *Tumblewood, supra,* in which the term "advertisement" was held applicable to a brochure exhibited to two hundred and fifty prospects not previously known to the salesman who solicited them. That holding is discussed by Professor Alan Bromberg in Texas Exemptions for Small Offerings of Corporate Securities— The Prohibition on Advertisements, 20 SW.L.J. 239 (1966). We agree with Professor Bromberg's view that "advertisement" implies public distribution, and that to apply the term to all written information presented to a prospective purchaser of securities would defeat rather than promote the purpose of the Act to require disclosure of material information because such a holding would grant the private offering exemption only to oral communications, which would normally be less informative than written communications. Unlike the brochure in *Tumblewood,* the record here failed to show any public distribution of the material in question.

### 2. Nondisclosure under Texas Securities Act

Defendant also contends that even if the stock was exempt from registration, the subscription agreement was unenforceable because of failure to disclose material facts, in violation of § 33(A)(2) of the Act, Tex.Rev.Civ.Stat.Ann. art. 581–33(A)(2) (Vernon 1964). This section imposes civil penalties upon any person who

[o]ffers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made not misleading.

Defendant's answer alleges the following omissions of material facts:

(1) the failure to give Defendant any written or oral information concerning the company's operation, scope and nature of business; (2) the failure to give Defendant any written or oral information concerning the financial status of the corporation; (3) failure to inform Defendant that the corporation was solvent at the time of its offer of the securities to Defendant; (4) failure to disclose to Defendant the fact that the corporation had offered and sold similar securities issued by it to other individuals besides the Defendant, when in fact Plaintiff's assignee [sic] had sold to at least eight or nine different individuals securities issued by the corporation similar to those described in the alleged subscription agreement in question; (5) failure to disclose to Defendant the terms upon which such third parties purchased or agreed to purchase the corporation's securities; and (6) failure to disclose that said parties who purchased or agreed to purchase securities of the corporation included both residents of Texas and non-residents of Texas.

■ Defendant does not allege, nor does he point out here, any statement made to him that was rendered misleading because of absence of information alleged to have been omitted. We do not see how any of the facts alleged to have been omitted would have served to prevent a misleading interpretation of the information given. The "confidential memorandum," if defendant saw it, cannot be considered misleading in this respect because it provides most of the information alleged to have been omitted. It shows that the business was an entirely new and speculative venture, describes the plan of operation, and explains that it is to be financed by issuance of 40,000 shares of stock at $1.00 per share with an agreement of the subscribers to loan to the corporation $4,000 for each 2,000 shares purchased. On the basis of the evidence before us we hold that none

of the matters alleged in the answer is shown as a matter of law to be an "omission to state a material fact necessary in order to make the statements made not misleading" within § 33.

■■ Other omissions are mentioned in the briefs and in the motion for judgment notwithstanding the verdict, such as the options held by Fanning and Laseter to purchase stock, but since these matters were not alleged in the answer, plaintiff was not required to show affirmatively that the information was disclosed or that it was not material. Apart from the lack of pleading, the record does not show as a matter of law that these matters were material or that they were necessary to keep the information given from being misleading. Consequently defendant has failed to establish that the trial court erred in overruling his motion for judgment notwithstanding the verdict.

### · 3. *Nondisclosure under federal securities acts*

■■ Defendant also asserts that the subscription agreement was unenforceable under § 12(2) of the Federal Securities Act of 1933, 15 U.S.C.A. § 77*l*(2) (1971), and Rule 10b–5 (13 Fed.Reg. 8177) promulgated by the Securities and Exchange Commission under authority of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) (1971). Section 12(2) of the 1933 Act forbids the use of the mails or any means of communication in interstate commerce to offer or sell any security "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." A similar prohibition is contained in Rule 10b–5. We see no substantial difference between these provisions and the language of § 33 of the Texas Securities Act above discussed.

They do not impose liability for omissions *per se*. 3 L. Loss, Securities Regulation 1702 (1961). For reasons already given with respect to the Texas Act, we hold that defendant has failed to establish as a matter of law a violation of either of the federal acts.

No issue is raised here concerning failure to comply with the registration requirement of the federal acts, since it is undisputed that the issuer in this case was a Texas corporation doing business in Texas and that the stock was offered and sold only to residents of Texas, within the exemption of § 3 of the 1933 Act, 15 U.S.C.A. § 77c(a)(11) (1971).

Affirmed.