**620**

SPENCE & GREEN CHEMICAL COM-
PANY, Appellant,

v.

Roy W. MOUER, Securities Commissioner,
Appellee.

No. 7568.

Court of Civil Appeals of Texas,
Beaumont.

May 30, 1974.

Motion for Rehearing Overruled
June 20, 1974.

J. C. Zbranek, Liberty, for appellant.

Bill Flanary, Asst. Atty. Gen., Austin, for appellee.

STEPHENSON, Justice.

This is an appeal from a judgment of the trial court upholding the order of the Securities Commissioner of the State of Texas, prohibiting the sale of its securities by Spence & Green Chemical Company and extending a prior order which prohibited secondary trading of such securities. The parties will be referred to here as "Spence & Green" and the "Securities Commissioner."

■ The parties agreed below and here that this is not a "substantial evidence rule" case and that a trial de novo in the district court was proper. However, Spence & Green has a point of error that it should not have been required by the trial court to assume the burden of proof. A reading of the record shows the approach to the case by the parties before the court was somewhat informal, and the action of the court could be construed as telling Spence & Green to go forward. In any event, no protest was made and no exception taken, and on oral argument it was conceded that the point was probably waived. Spence & Green offered documentary evidence and then called Andrew Spence and others as witnesses. This being a trial before the court, no questions arose as to special issues with designated burdens of proof. The error, if any, was waived by the failure to object and except. See Rule 373 and State v. Wilemon, 393 S.W.2d 816 (Tex. 1965).

Spence & Green contend the trial court was in error in upholding the action of the Securities Commissioner because the transaction involved was exempt under Section 5 of Article 581, Vernon's Ann.Civ.St. (known as The Securities Act), which reads in part as follows:

"Except as hereinafter in this Act specifically provided, the provisions of this

Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions:

\* \* \* \* \* \*

"E. Any offer and any transaction pursuant to any offer by the issuer of its securities to its existing security holders . . . if no commission or other remuneration . . . is paid or given directly or indirectly for soliciting any security holder in this State.

\* \* \* \* \* \*

"I. Provided such sale is made without any public solicitation or advertisements, (a) the sale of any security by the issuer thereof so long as the total number of security holders of the issuer thereof does not exceed thirty-five (35) persons after taking such sale into account . . ."

Andrew Spence testified: The Texas Corporation, Spence & Green Chemical Company, was formed in April, 1956. He was elected President and Chairman of the Board and has served in those capacities ever since. In 1956, stock in Spence & Green was sold and issued by this company to 24 stockholders. From 1957 through 1973 stock was sold by the issuer to an additional 29 new stockholders, making a total of 53. At the time of trial there were 750 stockholders, and 75 brokers were holding stock in this company. According to a chart offered to evidence by Spence & Green in 1973, there were 1,578,210 shares of stock outstanding. The original 8 founders put in about $400,000, the bulk of which was a patent owned by Andrew Spence. The balance of the stockholders put in a little over $500,000 since 1956.

Spence & Green has had a consistent net operating loss ranging from $39,266 in 1967 to $179,904 in 1971, with a total operating deficit of $939,892.

Spence & Green offered in evidence a copy of a brochure dated October 31, 1972, addressed to "Dear Stockholder" in which notice was given that such company was going to sell $500,000 worth of stock to the public as an exempt transaction. The offer was made to the Texas stockholders only. Such brochure showed that an attempt had been made to get the Securities and Exchange Commission to approve the offering of such stock for sale, but that the request to such application had been withdrawn when many deficiencies were pointed out.

■ No securities issued by Spence & Green have ever been registered with the State Securities Board. Section 7 of The Securities Act provides in part that no securities issued after September 6, 1955, shall be sold or offered for sale except those which have been registered in accordance with the Act. The present offer to sell by Spence & Green is in clear violation of the Act unless this offer is exempt as contended. We hold that it is not an exempt transaction.

If Spence & Green had sold its securities to 35 stockholders, and no more, and then later made an offer to sell only to the existing stockholders, the decision in this case would be more difficult. However, the record shows that Spence & Green has continued to sell to more than 35 stockholders since 1960, and that now the number has admittedly grown to 53. We do not find it necessary to determine whether or not Spence & Green was about to employ a device, scheme, or artifice to obtain money by false pretense, representation, or promise. The testimony by Andrew Spence about a "private placement letter" under the terms of which, for a period of ten years, a purchaser of stock agreed to offer to resell to the company before selling to anyone else; and an arrangement of selling

stock to a present stockholder who would resell to a new stockholder, together with the fact that this company has been able to distribute its stock so widely in this state with so few original sales, are circumstances which naturally arouse suspicion.

We place the affirmation of the judgment of the trial court squarely upon the proposition that the offer to sell securities to the present holders of stock, where the number of stockholders buying stock from the issuer exceeds 35, and the excess was reached in violation of The Securities Act, that the new offer is not an exempt transaction under Section 5 as contended by Spence & Green.

The reasons for the passage of The Securities Act are obvious. An attempt has been made through these many years to cure many of the excesses of promotional activity and manipulation in the sale of securities which culminated in the 1929 stock market crash. The requirement that securities be registered before being offered for sale gives the authorities an opportunity for close scrutiny for the buyers' protection. See and compare Flowers v. Dempsey-Tegeler & Co., 472 S.W.2d 112, 115 (Tex.1971). The exemption of certain private offerings has always been a part of the law so that a small group of persons could transact business through a corporation with no interference. The Texas statute is so designed, and we have concluded that a practical application of the exemption statute brings us to the result we have reached in this case.

Few cases are reported touching the critical point in this case. This court had occasion to write upon the exemption provisions of The Securities Act in Tumbleweed Bowling Corporation v. Matise, 388 S.W.2d 479 (Tex.Civ.App., Beaumont, 1965, error ref. n. r. e.), in which we cited Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704 (1956), for the proposition that one who claims an exemption from registration has the burden of proving such exemption. The question in that case was one as to the extent of the

advertising, as the number of stockholders was less than 35.

We have considered the remaining points of error; and, finding no merit to them, they are overruled.

Affirmed.