Weymon BROWN, Bill A. Dodgin, Richard Pruett, and James T. Thompson, Appellants,

v.

A.W. LAIR and the Lair Co., Inc., a Texas Corporation, Appellees.

No. 07–86–0047–CV.

Court of Appeals of Texas, Amarillo.

Sept. 30, 1987.

Rehearing Denied Dec. 31, 1987.

---

**434**

Bonnie J. Schomp, Saunders, Brian, Thomas & Smith, Amarillo, for appellants.

John Mozola, Underwood, Wilson, Berry, Stein & Johnson, Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

COUNTISS, Justice.

This is a Texas Securities Act case,[1] by which a group of disappointed investors seek recovery of money invested in several unprofitable oil and gas wells. Appellants Weymon Brown, Bill A. Dodgin, Richard Pruett, James T. Thompson, Mildred Cannon and Richardson Investments ("the investors") sued appellees The Lair Co., Inc., ("Lair Co.") and its president, A.W. Lair, on numerous common law and statutory theories, centered around fraud and United States and Texas securities law violations. Appealing from a generally adverse jury verdict, the investors advance twenty-three points of trial court error, preserving only their Texas Securities Act claims. We affirm in part, reverse and render in part, and reverse and remand in part.

In 1981, the investors purchased interests in several wells to be drilled by the Lair Co., including the Laake well and the Simpson well. Most of the wells produced small amounts of oil and gas, but none in paying quantities, and eventually all were abandoned. In 1984, unhappy with the loss of their money, the investors sued the Lair Co. and A.W. Lair, alleging as pertinent here that the Lair Co. sold unregistered securities through fraud and in violation of numerous provisions of the Act. Disputing the investors' contentions, the Lair Co. contends all wells except one were exempt from registration, and the investors are estopped to question any of the sales.

The Act generally requires registration of securities sold in Texas, art. 581–7, and specifically includes in its definition of security, "any instrument representing any interest in or under an oil, gas or mining lease...." Art. 581–4 A. Numerous civil remedies,[2] including recission, art. 581–32, or damages, art. 581–33, are available to a person who buys a security from a person who offers or sells in violation of sections 7 or 9 of the Act. However, numerous transactions, art. 581–5, and securities, art. 581–6, are exempt from registration. In this case, the Lair Co. bases its exemption defense on two section 5 transaction exemptions,[3] which, under certain conditions, exempt sales to existing security holders, art. 581–5 E, and sales, to thirty-five purchasers or less, of oil and gas securities. Art. 581–5 Q. *See, generally, Nicholas v. Crocker,* 687 S.W.2d 365, 369 (Tex.App.—Tyler 1984, no writ).

The case was submitted to a jury on sixty-six special issues. Except as discussed below, the jury either failed to find facts essential to the investors' recovery or found facts contrary to those alleged by the investors. Additionally, in the last special issue, the jury found that the investors were estopped to seek recovery of their investments. Recognizing that finding as the basis for a potentially fatal affirmative defense, the investors attack the finding by points of error one through four, which we will resolve first. In doing so however, we assume, but do not hold, that equitable estoppel is a viable affirmative defense to violations of the Act.

Special Issue 66, the trial court's accompanying instruction, and the jury's answers are as follows:

Special Issue No. 66

Do you find from a preponderance of the evidence that Plaintiff's conduct in permitting Defendants to take steps to

---

1. The Texas Securities Act is set out in article 581, sections 1 through 39, Tex.Rev.Civil Stat. Ann. (Vernon Supp.1987). It will be referred to in this opinion as "the Act" or as art. 581 xx.

2. Criminal sanctions are also available in art. 581–29.

3. The Lair Co. also relies on the transaction exemption in art. 581–5 I, which is a more generalized numerical exemption. However, our resolution of the issues in this case is based only on the sections 5 E and 5 Q exemptions. We express no opinion on the applicability of the section 5 I exemption to oil and gas securities.

protect Plaintiff's interest in the wells and Plaintiff's acceptance of these benefits estops Plaintiffs from now seeking recovery of their investments?

Answer "Yes" or "No" as to each Plaintiff:

| | | |
|---|---|---|
| a. | Weymon Brown | Yes |
| b. | Mildred Cannon | Yes |
| c. | Bill Dodgin | Yes |
| d. | Richard Pruett | Yes |
| e. | Richardson Investments | Yes |
| f. | James Thompson | Yes |

You are instructed that "estoppel" means:

a. A false representation or concealment of material facts,

b. made without [sic] knowlwedge, [sic] actual or constructive of the facts;

c. The party to whom it was made must have been without knowledge or the means of knowledge of the real facts;

d. The false representation or concealment of fact must have been made with the intention that it should be acted on; and

e. The party to whom it was made must have relied on it or acted on it to his prejudice.

The investors say the answers must be disregarded, and the estoppel defense discarded, because the evidence is legally and factually insufficient to support the answers. In resolving the points, we follow well-settled rules of appellate review.

■ Because it was the Lair Co.'s burden to prove the defense, *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W. 2d 834, 838 (Tex.1968), we determine the legal sufficiency of the evidence by examining the record for any probative evidence to support the finding, ignoring all contrary evidence. *Garza v. Alviar*, 395 S.W. 2d 821 (Tex.1965). If we find some evi-

dence, we must then determine whether it is factually sufficient by deciding whether, in light of all the evidence, the finding is not manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951).

■ That review, in this case, is conducted within the framework of the elements of equitable estoppel, set out in *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952). Those elements are: (1) a false representation or concealment of material facts, (2) made with actual or constructive knowledge of the facts, (3) to a party who had neither the knowledge nor the means to acquire knowledge of the real facts, (4) with the intention that the representation should be, and (5) it is relied on or acted on by the party to whom it was made, (6) to the party's prejudice. Failure to prove any element is fatal to the defense. *Barfield v. Howard M. Smith Company of Amarillo*, 426 S.W.2d at 839; *Cattle Feeders, Inc. v. Jordan*, 549 S.W.2d 29, 33 (Tex.Civ.App.—Corpus Christi 1977, no writ).

■ The Lair Co.'s defense is based on the premise that it spent money trying to salvage the wells, money it would not have spent if it had known the investors were going to sue it.[4] However, when we apply the above principles to the record before us, we agree with the investors that there is no evidence to support at least two of the elements of estoppel. Specifically, we find no evidence of any activity or lack of activity by the investors that was for the purpose of misleading the Lair Co., or causing its representatives to act as they did, and we find no evidence that its representatives acted as they did in reliance on a belief that the investors would not sue them.

It is undisputed that the Lair Co. spent a lot of its own money trying to make the wells productive and retrieving them from the bankruptcy court after the operator

---

4. Lair's counsel summarized for the jury his position on estoppel as follows:

At the back, you will have some issues on ratification, waiver and estoppel.

Basically, what these are directed to is the fact that these people never complained until July 9, 1984, when they filed this lawsuit, almost three years after the fact. Never com-

plained; let A.W. Lair try to salavage [sic] something out of a bad situation. Just let him keep on going, never said, "A.W., we're going to sue you, stop spending that money down at that bankruptcy court for those attorneys."

They never did that. You should answer all those questions yes.

went bankrupt. A.W. Lair also testified that he would have "cut my losses and gone" if the investors had not been involved. Those facts are not, however, evidence that can support either of the elements in question. Perhaps the investors are not sufficiently appreciative of the efforts made by A.W. Lair to rescue the wells, but we cannot convert their ingratitude into evidentiary support for an absolute bar of their lawsuit. Points of error one, two, three and four are sustained.

By their next four points, the investors challenge the evidentiary support for the jury's answers to issues one, two, three, four, five, eleven and twelve. The issues are pertinent to the investors' contention that the section 5 Q transaction exemption is not applicable to the sales. Under section 5 Q, as pertinent here, sales of oil and gas interests are exempt where "(1) the total number of sales by any one owner ... shall not exceed thirty-five (35) ... and (2) no use is made of advertisement or public solicitation; provided however, if ... sales are made by an agent for such owner ... such agent shall be licensed pursuant to this Act."

By its response to issue one, the jury failed to find that A.W. Lair or Ray Grimes, a Lair Co. employee, acted as salesmen for the Lair Co. in its dealings with the investors. By issue two, the jury found that neither A.W. Lair nor Grimes "sold each interest in each well to each Plaintiff." By issues three, four and five, the jury found that Grimes was not hired by the Lair Co. for the purpose of offering or selling working interests in wells; his activity in selling working interests was strictly incidental to his primary work duties and his compensation was based solely on the performance of his primary work duties. By issues eleven and twelve, the jury found that A.W. Lair was not hired by the Lair Co. for the purpose of offering or selling working interests in wells and that his activity in that regard was strictly incidental to his primary work duties.

The section 5 Q exemption requires licensing of an agent who makes sales for an owner, and neither A.W. Lair nor Grimes was licensed. However, the Act's regulations exempt agents from licensing under certain circumstances:

(a) For the purpose of Section 5 Q, an employee of the owner of an oil, gas or mineral lease, fee or title may aid such owner/employer in selling interests in such lease, fee or title and will not be considered an agent required to be licensed under the Act provided all the following conditions are satisfied:

(1) The employee was not hired for the purpose of offering or selling such securities;

(2) The employee's activity involving the offer and sale of such securities is strictly incidental to his bona fide primary non-securities related work duties; and

(3) The employee's compensation is based solely on the performance of such other duties, i.e., the employee does not receive any compensation for offering or otherwise aiding in the sale of securities.

3 Blue Sky L.Rep. (CCH) para. 55,564 (1985).

The special issues in question were tailored to determine whether A.W. Lair and Grimes were exempt from licensing under the foregoing regulation. By the jury's answers, they were. The question then is whether, under the evidence, those answers can stand.

■ In resolving that question, we apply settled standards of evidentiary review. Because issues one and two placed on the investors the burden of obtaining favorable answers, and they did not do so, we will review the entire record to determine whether the investors established the facts in question as a matter of law. *Texas & N.O.R. Co. v. Burden*, 146 Tex. 109, 203 S.W.2d 522, 530 (1947). If they did not, we will then determine, again from the entire record, whether the jury's failure to find the facts inquired about in issues one and two is manifestly unjust. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973).

Because the Lair Co. had the burden of obtaining favorable answers to issues

three, four, five, eleven and twelve, and did so, we will review the evidence pertinent to those issues under the standards set out in our disposition of the estoppel defense. *Garza v. Alviar, supra,* 395 S.W.2d 821; *In re King's Estate, supra,* 244 S.W.2d at 661–662.

■ The short answer to all of the investors' challenges is that both A.W. Lair and Ray Grimes testified that they were not salesmen and did not sell the interests in question. The jury was entitled to believe that testimony. Grimes testified specifically that he was not hired to sell interests in the wells and was not paid to do so. He said any sales were strictly incidental to his other duties. A.W. Lair supported Grimes' description of his duties.

A.W. Lair's description of his duties is less specific, but from a review of all of his testimony, it is apparent that Lair was not spending his time selling interests in the wells and that any sales he made were incidental. The picture painted by A.W. Lair, and obviously believed by the jury, was one of numerous investors approaching him and asking to purchase interests because they knew he had been successful in other drilling and business ventures. We do not perceive, from the evidence, that A.W. Lair and Ray Grimes were seeking out investors and convincing them to invest in the wells.

Under the review standards set out above, the foregoing evidence precludes us from disturbing the jury's answers to issues one and two and supports the answers to issues three, four, five, eleven and twelve. Therefore, points of error five, six, seven and eight are overruled.

■ By point nine, the investors raise the most difficult question in this appeal: Are the section 5 E and section 5 Q exemptions mutually exclusive? The Lair Co. sold over thirty-five security interests in the Simpson well. However, some of the sales were to the Lair Co. stockholders who were, by definition, "existing security hold-

ers." Art. 581–4 A. Under section 5 E, sales to stockholders are exempt.[5] If the stockholder sales are excluded, not more than thirty-five security interests were sold. Thus, the Lair Co. says sales to its stockholders are exempt under section 5 E and the remaining sales, being not more than thirty-five, are exempt under section 5 Q. The investors say the exemptions are mutually exclusive and cannot be stacked. Thus, they argue that thirty-five sales is the maximum allowable regardless of the status of the purchasers.

No Texas cases have decided the question and we find scant assistance elsewhere. We have concluded, however, that the Lair Co. can use both exemptions. We rely, first, on the unambiguous words of the statute. In its initial paragraph, art. 581–5 says the Act "shall not apply to the sale of *any* security when made in *any* of the following transactions and under *any* of the following conditions . . .; that is to say, the provisions of this Act shall not apply to *any* sale . . . of *any* security under *any* of the following transactions or conditions: . . . ." (Emphasis added.)

We must assume that the Legislature meant what it said. *Balios v. Texas Dept. of Public Safety,* 733 S.W.2d 308, 310–11 (Tex.App.—Amarillo 1987, writ ref'd). Here, it said any transaction listed in art. 581–5 is exempt. It did not place limits on the use of the exemptions or suggest that only one exemption is available for each venture.

We also observe that our conclusion is consistent with the purposes of the Act. The existing security holders are, presumably, sophisticated investors, well acquainted with the company. Thus, they have little need for the protection of the Act. *See Sibley v. Horn Advertising, Inc.,* 505 S.W.2d 417, 419 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.), *cert. denied,* 420 U.S. 929, 95 S.Ct. 1129, 43 L.Ed.2d 400 (1975). The sale to the remaining investors

---

**5.** The section 5 E exemption applies to:

Any offer and any transaction pursuant to any offer by the issuer of its securities to its existing security holders . . . if no commission or other remuneration . . . is paid or given directly or indirectly for soliciting any security holder in this State.

is a small offering of the sort generally disdained by the Act.

Finally, if we adopted the investors' contention, we would be holding that the section 5 Q numerical limit is superior to the section 5 E exemption. Yet, we find nothing in the statute or elsewhere that suggests the two exemptions are not of equal dignity. If one is to be accorded a superior position, the Legislature, not the courts, should say so.

The investors cite *Spence & Green Chemical Company v. Mouer,* 510 S.W.2d 620 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.), as the primary support for their contention. We readily admit that some of the language in *Spence & Green* supports the investors' argument. However, the case is factually dissimilar and the ultimate holding is ambiguous at best. We do not, therefore, consider it persuasive authority.

For the foregoing reasons, we hold that the section 5 E exemption and the section 5 Q exemption are not mutually exclusive and that sales to existing security holders, exempt under section 5 E, need not be counted in determining the number of sales to outsiders under the section 5 Q exemption. Point of error nine is overruled.

■ By points ten and eleven, the investors contend the evidence is insufficient to support the jury's answer to special issue thirteen. One of the conditions of the section 5 E exemption is that "no commission or other remuneration ... is paid or given directly or indirectly for soliciting any security holder in this State." That matter was resolved by Special Issue 13:

### Special Issue No. 13

Do you find that a commission or other remuneration was *not* paid *nor* given directly or indirectly for soliciting any stockholder of the Lair Company to purchase working interests in the wells in which Plaintiffs purchased interests?
Answer "Yes" or "No."
ANSWER: Yes.

The investors' attack on the factual and legal sufficiency of the evidence to support

the jury's answer will be resolved by the review standards of *Garza v. Alviar, supra* at 821 and *In re King's Estate, supra* at 661. Thus, we must determine whether there is evidence to support the finding, and if there is, whether the finding is manifestly unjust.

A.W. Lair testified as follows, when asked about commissions:

Q. In connection with the sale of any working interest, did the Lair Company pay anyone any kind of commission?

A. No, sir. Never.

Q. In connection with the sale of working interests of your family, including you, did anyone pay the Lair Company any kind of commission or other remuneration?

A. No, sir.

The jury was entitled to believe that testimony and it fully supports the jury's answer. Thus, there is evidence and it is sufficient. Points of error ten and eleven are overruled.

■ By point twelve, the investors contend they are entitled to judgment on the Laake well because the evidence is uncontroverted that it had over thirty-five outside investors, thus rendering inapplicable the sections 5 E and 5 Q exemptions. The Lair Co. does not contest the inapplicability of the exemptions, but relies on the estoppel defense. Because we have rejected that defense, we conclude, as to the Laake well, that the Lair Co. violated the Act as a matter of law. All parties agree that if we reach that conclusion, the Laake well investors are entitled to recover their investment. Therefore, we sustain point of error twelve and will remand that portion of the case to the trial court for further proceedings.

■ By points thirteen, fourteen, fifteen and sixteen, the investors attack the sufficiency of the evidence to support the jury's answer to special issue six. By that issue the jury failed to find that sales to the investors were made "by use of advertisement or public solicitation." Had the jury made the finding, it would have negated the Lair Co.'s section 5 Q exemption, be-

cause one of the section 5 Q requirements is that "no use is made of advertisement or public solicitation." [6] We will determine whether the answer can remain viable under the review standards of *Texas & N.O.R. v. Burden, supra,* 203 S.W.2d at 530 and *Traylor v. Goulding, supra,* 497 S.W.2d at 945, noting that no evidence is required to support the failure to find a fact.

In response to questions from his counsel, A.W. Lair testified that there was no public solicitation and no advertising in connection with the sales to the investors. Ray Grimes gave the same testimony. The jury was entitled to believe the testimony and apparently it did. The investors argue for a broad interpretation of public solicitation and advertising, but we need not pass on that contention because of the direct evidence that the Lair Co. did not publicly advertise or solicit sales. Points of error thirteen, fourteen, fifteen and sixteen are overruled.

By points seventeen and eighteen, the investors contend they proved as a matter of law that A.W. Lair and the Lair Co. violated the Act. The argument under the points is dependent on our sustentation of various preceding points under which the investors attempt to establish the facts vital to their recovery. We have concluded, by sustaining point twelve, that the Lair Co. did, as a matter of law, violate the Act in the manner specified in our discussion of that point. By overruling the remaining points, we have rejected the conclusive existence of other alleged violations. We find nothing in the argument accompanying points seventeen and eighteen that mandates a different conclusion. Therefore, points of error seventeen and eighteen are overruled.

By their remaining points nineteen, twenty, twenty-one, twenty-two and twenty-three, the investors complain about the jury's failure to award damages and attorney's fees. Because we have rejected all theories of liability, except on the Laake well, and because of the nature of our remand as set out below, the points are immaterial. Therefore, points of error nineteen, twenty, twenty-one, twenty-two and twenty-three are overruled, except to the extent they are sustained in the next paragraph.

That portion of the judgment denying recovery to the investors in the Laake well is reversed, judgment is here rendered that the Lair Co. is liable to the investors in the Laake well, as a matter of law, and, because the trial court is better equipped to determine the damages, that portion of the case is remanded to the trial court for the sole purpose of determining damages, offsets and attorney's fees if any, to be awarded because of the sale of security interests in the Laake well. Tex.R.App.P. 81(b)(1). In all other respects, the judgment of the trial court is affirmed.

Two-thirds of the costs are assessed to the investors and one-third to the Lair Co.

**6.** The law review article, Bromberg, *Texas Exemptions for Small Offerings of Corporate Securities—The Prohibition on Advertising,* 20 S.W.L. J. 239 (1966), is an excellent discussion of "advertisement or public solicitation" within the context of the Act.